IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DAVID BITTON,
SALEEM PORTER,

    Plaintiffs,

v.                                    CASE NO. 05-CV-2045 (JDB)

ALBERTO GONZALES, Attorney Gneral,
U.S. DEPARTMENT OF JUSTICE,
HARLEY G. LAPPIN, Director,
FEDERAL BUREAU OF PRISONS,
SUSAN VAN BAALEN, Chief Chaplain,
THREE UNKNOWN NAMED EMPLOYEES
OF THE FEDERAL BUREAU OF PRISONS
FOOD SERVICE PROGRAM REVIEW TEAM
FOR ATLANTA USP 2005,

    Defendants.
_____/

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

    Plaintiffs, DAVID BITTON, and SALEEM PORTER, hereby move the Court pursuant to Fed. R. Civ. P., R. 65(a) to enjoin the defendants, their employees and agents directing them from preventing the plaintiffs from the practice of their Orthodox Jewish faith, and Sunni Muslim faith by providing kosher meals to the plaintiffs in a manner required by the Constitution, the Religious Freedom Restoration Act, and BOP regulation. In support thereof plaintiffs state as follows.

RECEIVED

JAN 1 2 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Plaintiffs David Bitton an Orthodox Jewish inmate and saleem Porter a Sunni Muslim have instituted this action requesting the Court intervene and direct the defendants to provide kosher meals to them in order that the plaintiffs can practice their religion.

In prison the defendants have enacted a religiously adherent meal commonly referred to as "common fare". Notwithstanding this regulation (28 C.F.R. §548.13; and BOP, Program statement, §4700.04, Food Service Manual; P.S. §5360.07, Religious Beliefs and Practices). defendants have refused to implement the practice and have provided self-serving unsworn responses to the administrative remedies filed by the plaintiffs. These answers by the defendants claim that they have implemented and complied with the regulations. If this were true defendants should not object to the Court interposing itself and directing compliance with these requirements.

All the evidence points to the fact that not only have the defendants failed to institute National policy, they have failed to properly provide a clean and sanitary food preparation program, (See, Ex. A. Affidavit of Saleem Porter, Ex. B. Affidavit of David Bitton, Ex. C. Affidavit of Booker Muhammad, Ex. D Letter of Orthodox Jewish Rabbi Yossi Lerman) have failed to provide for the proper storage of foods, have failed to repair systems that properly hold foods at proper temperatures, and have failed to provide religiously adherent foods under kosher guidelines as BOP National policy requires.

Additionally, other inamtes and their agents have found it necessary to file claims under the Federal Tort Claims Act as a result of food poisoning due to the refusal of Mechanical Services Employees not repairing equipment meant to properly store perishable foods. (See, Ex. E, Claim of Daniel Levitan under FTCA).

Defendants have traveled from Washington D.C. to inspect the facility and have also refused to properly evaluate or audit the facility to insure compliance with the national policy. These failures have also contributed to the fact that plaintiffs free exercise of their religion is being substantially burdened.

Defendant Susan Van Baalen the head of the chaplaincy has issued e-mails to the Muslim chaplain Imam Sabree directing him to inform the Food service Department of the deficiencies in the service of common fare or kosher meals to inmates who require it. The defendants are aware of these serious deficiencies, have been told by Rabbi Lerman that "immediate attention is necessary!" (See, Ex. D) and several instructive e-mails have been issued directing corrective measures only to fall on deaf ears.

In all defendants are fully aware of the improprities, the violations of the Constitution, the law, regulation, but have refused to enact sufficient meaningful actions to correct these violations of kosher law.

Defendants have additionally allowed the use of utencils that have prepared prok products, such as knives that have been used outside of the common fare room, the mixing of meat and dairy products which was witnessed by Rabbi Lerman on an occasion of a surprise inspection, and have allowed the introduction of non-kosher products into the common fare room. It is these flagrant actions for the disregard of kosher law, and of the regulations which direct otherwise that require the Court to intervene and direct the defendants to comply with the law.

MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs are practicing their faith and the defendants are substantially burdening that practice by their continued refusal to provide kosher meals; meals that the defendants own policies require.(BOP, Program Statements §§5360.07, 4700.04) These National policies have no effective means to insure compliance within the Federal Prison System. Plaintiff has not received a religiously adherent meal since the time of being designated to the Federal prison camp in Atlanta, Georgia, and plaintiff Bitton has not eaten from the Food Service Department since October, 2005.

It is well established that prisoners retain constitutional rights in prison, including the free exercise rights under the First Amendment. Levitan v. Ashcroft, 281 F.3d 1313, 1317 (D.C. Cir. 2002), citing Pell v. Procunier, 417 U.S. 817 (1974).

Plaintiff's religious sacraments direct that they maintain a kosher or halal diet. Defendants have a specific program to provide for this diet but have taken no actions on the National policy to guarantee compliance. The First Amendment is meant to protect the plaintiffs from the sort of conduct of prison officials that is outlined herein.

> The fact that the First Amendment does not protect only compelled religious conduct does not mean the Constitution forbids all constraints on religiously motivated conduct, however trivial. Instead, the First Amendment is implicated when a law or regulation imposes a substantial, as opposed to inconsequential burden on the litigant's religious practice.

See, Levitan v. Ashcroft, at 1320.

Congress has created another avenue of relief other than the First Amendment which created only a floor of rights - not a ceiling. Under this avenue of relief of the Religious Freedom Restoration Act (RFRA) 42 U.S.C. §2000bb-1, et. seq., which was passed in likely response to Employment Division v. Smith, 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990), where it was held that strict scrutiny shall be applied to a governemnt's substantial burden of a religious tenet.

RFRA's likely response to Employment Division which held that laws of general applicability that incidentally burden religious conduct do not offend the First Amendment unless that burden violates a precept or religious tenet.

RFRA raises the standard set in Employment Division by requiring the Federal government to demonstrate that prison regulations do not substantially burden the free exercise of religion, are the least restrictive means of achieving a compelling government interest. Even were this test be be reviewed in its' entirey and a balancing test applied the defendants cannot present any defense to that test because they themselves have formulated a federal regulation, and implementing rule that requires them to serve kosher meals to the plaintiffs while incarcerated.

Even after the strict scrutiny standard is met it is still the government's burden subject to a rationally related test under Turner v. Safley, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987); and in the religious context limitations on the faith under O'Lone v. Estate of Shabazz, 482 U.S. 342, 107 S.Ct. 2400 96 L.Ed.2d 282 (1987). Both of which provide balancing test. Even after these analysis are completed RFRA provides for additional protections for the free exercise of religious worship, respecting that Employment Division set only the constitutional floor - not a ceiling for the protection of personal religious liberty. Employment Division explicitly left heightened legislative protection for religious worship to the political branches. Employment Division, 494 U.S. at 890, 110 S.Ct. 1595.

Essentially assuming arguendo if <u>Employment Divisions</u>' rejection of the compelling interest test undermined an exception, the test and the exception were revalidated by RFRA.

This heightened standard warns of the defendants violation and burden of the plaintiffs' faith. The letter from Orthodox Rabbi Yossi Lerman on contract with the BOP (Ex. D) specifically reinforces the fact that the defendants recitation of their own policies of compliance belies the true facts that defendants are substantially burdening plaintiff's faithful participation in the Jewish and Muslim tenets of consuming only kosher or halal foods.

> RFRA PROVIDES, IN PERTINENT PART:
>
> §2000bb
>
> (b) The purpose of this chapter are -
>
> (1) to restore the compelling interest test as set for in <u>Sherbert v. Werner</u>, 374 U.S. 398 (1963), and <u>Wisconsin v. Yoder</u>, 406 U.S. 205 (1972), and to guarantee its application in all cases where free exercise of religion is substantially burdened; and
>
> (2) to provide a claim or defense to persons whose religious exercise is substantially burdened by government.

Defendants policies although requiring kosher meals have failed to provide the plaintiffs with religiously adherent meals. Defendants have failed to enforce their own policies, their employees who audited the facility failed to independently audit the enforcement of the policies and as a result the systems

that should be providing the plaintiffs with kosher meals have experienced catastrophic failure because no on in the BOP wants to give their fellow worker a failing grade, especially when that failing grade will require the auditor to do more work.

In order to meet the requirements for a preliminary injunction the court must weigh four factors: (1) whether the plaintiff has a substantial likelihood of success on the merits; (2) whether the plaintiff would suffer irreparable injury were an injunction not granted; (3) whether an injunction would substantially injure other ineterested parties; and (4) whether the grant of an injunction would further the public interest. See Serono Laboratories Inc. v. Shalala, 158 F.3d 1313, 1317-1318 (D.C. Cir. 1998).

First and foremost it is generally accepted that the plaintiffs have an inviolate right to kosher meals while confined in prison and the defendants own policies guarantee this. See, i.e. Kahane v. Carlson, 527 F.2d 492 (2d Cir. 1975).(Federal prison was required to provide Orthodox Jewish prisoner with diet sufficient to maintain prisoner in good health without violating Jewish dietary laws). BOP, P.S. 4700.04, 5360.07.[1/]   With the general acceptance of the requirements of providing kosher meals to the plaintiff and the defendants own policies guaranteeing the same success is quite likely as there would be no defense to the defendants protestations because their own policies are supposed to require them to supply the ksher meals.

---

1./   Program Statements available at www.bop.gov/progstat

Secondly, plaintiffs have been suffering injury for some time now. Plaintiff Bitton has not eaten from the Food Service Department since October, 2005. Continued harm would only continue to allow the defendants to violate their own policies and refusal to abide by them. Absent an injunction by the Court that injury and harm will continue. Defendants have an affirmative duty to supply kosher meals but have refused to do so. <u>See also</u>, <u>Washington Metropolitan Area, Etc. v. Holiday Tours</u>, 559 F.2d 841 (D.C.Cir. 1977)

Granting of the injunction under the third factor would not harm any of the inetested parties as the defendants already have a policy to provide kosher meals, eventhough they do not impose any guarantee of its' enactment, defendants therefore already admit by the formation of policies that they are required to supply these kosher meals.

Lastly, as a society all have an interest in the expectation that Federal officials will follow regulations, rules policies and the law when it comes to treating incarcerated persons pursuant to their status as prisoners. Congress expressed this interest when it passed RFRA and the BOP further enforces this when their regulations admit to being required to provide kosher meals.

CONCLUSION

For the foregoing reasons and as exhibited by affidavit of witnesses and evidence reviewed herein plaintiffs would request that the court enter its' preliminary injunction directing that the defendants immediately provide the plaintiffs with kosher meals, certified by an Orthodox Jewish Rabbi.

Respectfully submitted,

DAVID BITTON
Federal Prison Camp
601 McDonough Boulevard, S.E.
P.O. Box 150160
Atlanta, GA. 30315-0160

Dated: 1-6-06

*/s/ David Bitton*
DAVID BITTON

SALEEM PORTER
Federal Prison Camp
601 McDonough Boulevard, S.E.
P.O. Box 150160
Atlanta, GA. 30315-0160

Dated: 1-6-06

*/s/ Saleem Porter*
SALEEM PORTER

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent by U.S. Mail first class postage prepaid to Karen L. Melnik, A.U.S.A., 555 Fourth Street, N.W., Washington D.C. 20530 on this 6th day of January, 2005.

_____
DAVID BITTON

-11-